Betty Venable

*v.*

State of Tennessee

*(Nashville,* December Term, 1956.)

Opinion filed February 8, 1957.

W. C. Rodgers, Memphis, for plaintiff in error.

Thomas E. Fox, Assistant Attorney General, for the State.

Mr. Chief Justice Neil delivered the opinion of the Court.

This case involves the conviction of Betty Venable under an indictment charging her with (1) fraudulent breach of trust and (2) larceny. The jury returned a special verdict under the first count as follows: "We, the jury, find the defendant guilty of fraudulent breach of trust and fix her punishment at six months in the workhouse."

A motion for a new trial was seasonably made, based upon numerous errors assigned, and overruled. These errors are made the basis of assignments of error in this Court.

The first assignment is that the verdict of the jury was "without evidence to support it." As we view the evidence this assignment presents the crucial question, to wit, does the evidence make out a case of fraudulent breach of trust?

Other assignments relate to errors in the admissibility of evidence offered by the State over the defendant's objection; also for error in refusing certain special requests by defendant's counsel.

The statute defining the crime of fraudulent breach of trust reads as follows:

"The fraudulent appropriation of personal property or money by any one to whom it has been delivered on deposit, pledge, sequestration, or to be carried or repaired, or in whose hands or under whose control it may be by his position as clerk, agent, factor, or bailee, or on any other contract or trust by which he was bound to deliver or return the thing received or its proceeds, is a fraudulent breach of trust." Section 39-4226, T.C.A.

The remaining part of the foregoing section is not applicable to the case before us.

We deem it unnecessary to discuss the distinction between breach of trust and larceny, Code Section 39-4227, T.C.A., since the defendant was acquitted of the crime of larceny. Nor is it important to consider the distinction between breach of trust and embezzlement.

The defendant, Betty Venable, was employed as secretary by a firm of lawyers in the City of Memphis, composed of George Herring and Saul Kay. She was 23 years of age and had been employed by others as secretary before she went to work with the firm of Herring and Kay. She was hired by this firm in August, 1955. She went to work on August 27, 1955. Among the duties devolving upon her was to accept and receipt for moneys due the firm; also, as part of her duties, to make deposits in the First National Bank to the credit of the firm. According to Mr. Herring's testimony she was employed "on probation".

He testified as to the policy of the firm regarding the making of deposits and keeping of money by Miss Venable: "When she took money in the morning, she was supposed to make a deposit when she went to lunch at twelve. Any money she received in the afternoon, she was supposed if I was not there, she was to put it in the bottom lefthand drawer where I had a lock on my desk."

It thus appears that the custom or policy was something she was *supposed* to do in the handling and making deposits of money received by her from time to time. Mr. Herring testified that "on two occasions she had taken the money home, and I told her to leave the money there in the bottom lefthand drawer of my desk".

On September 26, 1955, which was about one month after she was employed, she didn't come to work. On the next day, according to Mr. Herring, he gave her $50 in currency, and the bank book, to deposit in the bank when she went to lunch at 12 o'clock. When he returned to the office at 2 o'clock he found the following note from Miss Venable:

"Mr. Herring

My mother has had a heart attack. I'll call you later today.

Betty"

This was on Tuesday, September 27, 1955. She did not call that afternoon. She had taken the $50 home with her instead of leaving it in Mr. Herring's desk drawer, as he had instructed her to do previously.

Mr. Herring at once instructed his partner, Mr. Kay, to go out to Miss Venable's home and pick up the money. Later on in the afternoon around 5:30 he went out on the same mission, and found no one to answer his knock on the door. On the next morning, which was the 28th, Miss Venable called the office and stated her reasons for suddenly going home, that her mother had had a heart attack. She stated she had the money. The conversation was more or less heated. Miss Venable became very angry and in the course of this conversation she said, "I'll bring the money back when I get good and ready."

Q. "Did she say she would bring it back any particular time? A. "Yes, sir, 28th of September."

On the next day Mr. Herring made complaint to the police department. This was on Thursday, the 29th.

The record shows without dispute that Miss Venable mailed a valid money order to the First National Bank for $50 to be credited to the account of Herring and Kay. This note was dated September the 29th as was the money order. However, there is a dispute as to the date on which it was actually mailed to the bank. The bank received the order on or before October the 7th, 1955.

Miss Venable was arrested on the charge of breach of trust about the time the bank received the money order for deposit as above stated. The indictment was returned by the grand jury on October the 7th, 1955, which was approximately one week after Miss Venable had received the $50 for deposit.

We have given the entire record the most careful consideration. When it is stripped of inferences to be drawn from what Miss Venable was *supposed to do* in complying with her employer's instructions, and her failure to comply, as well as incompetent and highly prejudicial evidence offered by the State, we can find only a bare suspicion of guilt of the crime of fraudulent breach of trust. The evidence is wholly insufficient to sustain the verdict.

We cannot escape the conclusion that both Mr. Herring and Miss Venable became very angry with each other in their telephone conversation on the morning after she received the money for deposit. He was angry because she had violated his instructions about making the deposit. She was angry because she felt she had done no wrong, and that her employer, by his conduct, had wrongfully accused her of misappropriation of the money.

The plaintiff in error did not use the money for any purpose. The wrong actually committed was in not observing the policy of her employer as to how daily receipts of money should be handled and deposited. To be more specific, she is thought to have committed a grievous wrong in taking this $50 home with her without depositing it during her 12 o'clock lunch hour, and in not leaving it in Mr. Herring's desk drawer when she

left for home. Her conduct in this regard can only be construed as a private wrong. It was not a "fraudulent appropriation of personal property" as defined by Section 39-4226 of the Code.

The incompetent evidence to which we have referred, and which was highly prejudicial, consisted (1) of a letter written by Miss Venable in which she severely criticized certain members of the police department of Memphis. She certainly gave them a "tongue lashing", as stated by Lieutenant Chenault, some of her language being very "unlady-like". This letter was written by Miss Venable when she left her job with the police department. This was sometime prior to her employment by Herring and Kay. Its contents had no bearing whatever upon her guilt or innocence of the crime for which she was subsequently tried and convicted. The only inference to be drawn from this letter, as well as other testimony, is that Miss Venable was a high-tempered and highly nervous individual. Her anger and use of profane language would indicate she was more or less a neurotic, which could be attributed to the fact that she had an attack of polio when she was a young girl.

The evidence of the auditor of the First National Bank that her personal account at the bank was overdrawn in the amount of $9.73 on July 25, 1955, was irrelevant. Later in October her account was shown to have been overdrawn in the sum of $72.19. In the meantime she had made deposits to cover the first overdraft. We feel that this evidence was irrelevant and incompetent.

There is evidence in the record that Miss Venable, while working for Herring and Kay and a former em-

ployer, had charged a number of long-distance phone calls to their account. This, of course, was extremely reprehensible. But it was irrelevant and inadmissible, and was so held by the learned trial judge.

The assignments of error are sustained, and the case reversed on the facts.